# In the United States Court of Appeals
## for the
# Fifth Circuit

**Case No. 25-30345**

No. 25-30345
consolidated with
No. 25-30418, 25-30659

**SIXELA INVESTMENT GROUP,**

*Plaintiff - Appellant*

v.

**HOPE FEDERAL CREDIT UNION;**
**COMMUNITIES UNLIMITED, INCORPORATED,**

*Defendants – Appellees*

**On Appeal from the United States District Court**
**For the Western District of Louisiana**

**BRIEF OF HOPE FEDERAL CREDIT UNION'S IN RESPONSE TO**
**BRIEF OF CHAMBER OF COMMERCE AS *AMICUS CURIAE***

Christopher H. Meredith, MSB No. 103656
Copeland, Cook, Taylor & Bush, P.A.
600 Concourse, Suite 200
1076 Highland Colony Parkway (Zip—39157)
P.O. Box 6020
Ridgeland, Mississippi 39158
Telephone: (601) 856-7200

**COUNSEL FOR HOPE FEDERAL**
**CREDIT UNION**

## TABLE OF CONTENTS

Table of Contents ...................................................................................... ii

Table of Authorities.................................................................................. iii

Introduction ..............................................................................................1

Argument...................................................................................................2

    I.    The Court Should Not Reach the Issue of Disparate Impact
        Liability ...........................................................................................2

        A.    Amicus Curiae May Not Expand the Scope of an Appeal..........2

        B.    The Arguments Presented in the Amicus Brief are
                Irrelevant to This Appeal.........................................................3

    II.    If Addressed, This Court Should Reaffirm That Disparate
        Impact Claims Are Cognizable Under the ECOA ...............................5

        A.    The Chamber Has Not Identified a Single Erroneous
                ECOA Judicial Decision ...........................................................5

        B.    Disparate Impact is Valuable to Smoke Out Subtle,
                Intentional Discrimination .......................................................6

        C.    Market Realities Defy the Chamber's "Innocent Causes"
                Theory .....................................................................................7

        D.    Disparate Impact Liability Fosters, Rather Than Chills,
                Market Growth..........................................................................8

Conclusion ................................................................................................8

Certificate Of Service...............................................................................10

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) .......................................11

TABLE OF AUTHORITIES

**U.S. Supreme Court Cases**
*Ricci v. DeStefano,*
   557 U.S. 557 (2009)............................................................6

**U.S. Court of Appeals for the Fifth Circuit Cases**
*Bridges v. City of Bossier,*
   92 F.3d 329 (5th Cir. 1996)...........................................3

*Christopher M. v. Corpus Christi Indep. Sch. Dist.,*
   933 F.2d 1285 (5th Cir. 1991)........................................2

*Garcia-Melendez v. Ashcroft,*
   351 F.3d 657 (5th Cir. 2003)...........................................2

*Redd v. Controls,*
   No. 92-8702, 1994 U.S. App. LEXIS 42837, (5th Cir. Aug. 29, 1994) .................2

*Resident Council of Allen Parkway Vill. v. United States Dep't of Hous. & Urban Dev.,*
   980 F.2d 1043 (5th Cir. 1993)..........................................2

*Voices for Int'l Bus. & Educ., Inc. v. NLRB,*
   905 F.3d 770 (5th Cir. 2018)...........................................2

*Weathers v. Hous. Methodist Hosp.,*
   116 F.4th 324 (5th Cir. 2024).........................................2

*World Wide St. Preachers Fellowship v. Town of Columbia,*
   591 F.3d 747 (5th Cir. 2009).........................................2

**Other Sources**
Hope Credit Union/Hope Policy Institute/Hope Enterprise Corporation Comment
   Letter on Equal Credit Opportunity Act (Regulation B) (Dec. 15, 2025).............8

**INTRODUCTION**

The *amicus* brief (the "Amicus Brief") of the Chamber of Commerce of the United States of America (the "Chamber") asks this Court to issue a sweeping, novel ruling abolishing "disparate impact" as a theory of liability under the Equal Credit Opportunity Act ("ECOA"). This Court should decline the invitation. As a threshold matter, this Court need not even reach the issue of disparate-impact liability because the District Court's orders currently on appeal did not rest on the legal recognition of disparate-impact claims under the ECOA, but rather on the failure of plaintiff Sixela Investment Group ("SIG") to bring forth any evidence in support of such a claim.

However, if this Court chooses to address the question, it should reaffirm that disparate impact is a valid means of demonstrating discrimination under the ECOA. Notably, despite warning of "costly suits brought on tenuous legal theories,"[1] the Chamber fails to identify a single ECOA disparate-impact ruling that it contends was wrongly decided. Instead, it asks this Court to upend decades of well-settled law based on theoretical grievances. Abolishing the disparate-impact framework is completely unnecessary and it would eliminate a valuable mechanism for challenging modern, subtle forms of intentional discrimination.

---

[1] Amicus Brief at 26.

**ARGUMENT**

## I.    The Court Should Not Reach the Issue of Disparate Impact Liability

The Chamber purportedly filed its Amicus Brief "in support of" Hope, but the Chamber is advancing legal theories that Hope did not request[2] and, in fact, explicitly asked the Chamber not to advance. This Court need not, and should not, address the Chamber's statutory argument concerning disparate-impact liability under the ECOA because it has not been raised by the parties and because it is entirely unnecessary to the resolution of this appeal.

### A.    Amicus Curiae May Not Expand the Scope of an Appeal

"It is well-settled in this circuit that 'an amicus curiae generally cannot expand the scope of an appeal to implicate issues that have not been presented by the parties to the appeal.'"[3] No party in this case has argued or preserved for appeal any claim that "disparate impact" is not a valid theory of liability under the ECOA. For this reason alone, this Court should disregard and not consider the Chamber's arguments in its Amicus Brief.

---

[2] *See Voices for Int'l Bus. & Educ., Inc. v. NLRB*, 905 F.3d 770, 775 n.6 (5th Cir. 2018) ("we do not consider arguments raised by an amicus that the party it is supporting never made").

[3] *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 752 n.3 (5th Cir. 2009) (quoting *Resident Council of Allen Parkway Vill. v. United States Dep't of Hous. & Urban Dev.*, 980 F.2d 1043, 1049 (5th Cir. 1993)). *See also Weathers v. Hous. Methodist Hosp.*, 116 F.4th 324, 329 (5th Cir. 2024) (same); *Garcia-Melendez v. Ashcroft*, 351 F.3d 657, 662 n.2 (5th Cir. 2003) (same); *Redd v. Controls*, No. 92-8702, 1994 U.S. App. LEXIS 42837, at *8 (5th Cir. Aug. 29, 1994) (same); *Christopher M. v. Corpus Christi Indep. Sch. Dist.*, 933 F.2d 1285, 1293 (5th Cir. 1991) (claim not appealed by appellant cannot be raised by amicus curiae).

To skirt this rule, the Chamber cites *Bridges v. City of Bossier*[4] and suggests that the Amicus Brief offers a "variation on Hope's argument that Plaintiff has not stated a claim for disparate impact liability."[5] But in *Bridges*, this Court considered an argument first raised in an amicus brief because it was in support of an issue raised by *the appellant* and therefore preserved for appeal.[6] Here, Hope is an *appellee* and has not raised as an issue in this appeal that SIG failed to state a claim for disparate-impact liability under the ECOA. Accordingly, this Court should not address the arguments raised in the Amicus Brief because they impermissibly seek to expand the scope of this appeal.

### B.    The Arguments Presented in the Amicus Brief are Irrelevant to This Appeal

This Court also should disregard the Amicus Brief because the Chamber's arguments are irrelevant to the issues currently before this Court. The Chamber suggests that if this Court reverses the District Court's grant of summary judgment to Hope, then this Court must decide the statutory validity of disparate impact to save Hope from a potential "discovery dispute" and a "round of costly litigation"[7] in which the Plaintiff might "trawl through" Hope's lending policies.[8]

---

[4] *Bridges v. City of Bossier*, 92 F.3d 329 (5th Cir. 1996).
[5] Amicus Brief at 6.
[6] *Bridges*, 92 F.3d at 334 n.8.
[7] Amicus Brief at 5.
[8] Amicus Brief at 4–5.

The Chamber's purported concern for Hope's discovery burdens is a solution in search of a problem. As the appellate record reflects, Hope already produced its lending policies in the underlying litigation.[9] There is no looming, catastrophic discovery dispute from which the Chamber needs to rescue Hope.

The District Court granted summary judgment after nearly a year of discovery. Concerning SIG's disparate-impact claim, the District Court found that "there is no sufficient evidence from the summary judgment record to show such [discriminatory] policies and procedures [of Hope] ever existed."[10]

In this appeal, SIG has *not* preserved or raised as an issue an argument that any discriminatory policies or procedures actually exist or were not produced, merely that the District Court should have given SIG "additional time to oppose Hope's March 17, 2025, Motion for Summary Judgment" because of SIG's counsel's "struggle[es] to maintain working control over and access to the voluminous discovery" Hope had already produced.[11] Thus, there is no need for this Court to issue an advisory opinion upending the substantive scope of the ECOA, particularly to entertain an uninvited argument that Hope itself opposes.

---

[9] ROA.25-30345.5496.
[10] ROA.25-30345.5498.
[11] SIG Brief at 18.

4

## II.    If Addressed, This Court Should Reaffirm That Disparate Impact Claims Are Cognizable Under the ECOA

If the Court *does* reach the issue of whether disparate-impact claims are cognizable under the ECOA, this Court should reject the Chamber's arguments. Disparate impact liability is a well-settled and indispensable mechanism for fulfilling ECOA's statutory charge to eradicate credit discrimination.

### A.    The Chamber Has Not Identified a Single Erroneous ECOA Judicial Decision

The Chamber asserts that "[f]ederal court dockets are replete with examples of costly suits brought on tenuous legal theories,"[12] but the Amicus Brief offers no actual ECOA jurisprudence to support this claim. Indeed, the Chamber has not identified a single judgment under the ECOA demonstrating that the disparate-impact framework is unworkable or has led to erroneous judicial outcomes. Instead, the Chamber appears to rely solely on a defunct 2013 agency guidance document regarding indirect auto lending, which appears to have been problematic *not* because of any issue with the disparate-impact framework itself, but because of the unique way it was being applied to an indirect lender based on a third party's policies over which the lender had no control.[13]

---

[12] Amicus Brief at 26.
[13] Amicus Brief at 26.

5

In short, Hope respectfully asks this Court not to "fix" a statutory-interpretation scheme that is not broken.

### B.     Disparate Impact is Valuable to Smoke Out Subtle, Intentional Discrimination

The Chamber correctly observes that disparate impact originally arose as a tool "to 'smoke out,' as it were, disparate treatment"[14] hiding behind facially neutral policies.[15] However, the Chamber incorrectly concludes that disparate impact is unnecessary because plaintiffs can simply bring "disparate treatment" claims by proving that a neutral policy is a "pretext" for intentional discrimination.[16]

In this regard, it is not clear what the Chamber is suggesting, as a lender's use of a facially neutral policy that results in discrimination against a protected class is precisely what the disparate-impact framework is. If the Chamber is suggesting that discrimination must always be proven with direct evidence of subjective intent, that suggestion is practically unworkable and would essentially serve as a how-to-discriminate guide for lenders.

In modern lending, proving subjective discriminatory intent with direct evidence is virtually impossible. Lenders can shield discriminatory practices

---

[14] *Ricci v. DeStefano*, 557 U.S. 557, 595 (2009) (Scalia, J., concurring).
[15] Amicus Brief at 23.
[16] Amicus Brief at 24.

6

behind opaque, "black box" algorithms or neutral-seeming underwriting policies. Without a "smoking gun" memo proving that a bank intentionally designed an algorithm to discriminate, plaintiffs would have no recourse under the Chamber's proposed framework. Disparate impact liability allows courts to look objectively at statistical realities that can only be explained by discriminatory intent, without requiring impossible-to-obtain proof of subjective malice.

**C.   Market Realities Defy the Chamber's "Innocent Causes" Theory**

The Chamber implies that statistical lending disparities can result from policies "adopted for neutral reasons."[17] Publicly available market data demonstrates otherwise. Severe disparities in the credit market cannot be explained away by valid, neutral lending criteria such as income or credit scores.

For example, analysis of Home Mortgage Disclosure Act data reveals that Black borrowers in the Deep South earning over $150,000 face mortgage denial rates that are almost equal to white borrowers earning between $31,000 and $50,000.[18] Furthermore, the Consumer Financial Protection Bureau's data shows that borrowers of color experience higher denial rates than their white counterparts across identical credit score tiers.[19] These outcomes are not innocent; they are

---

[17] Amicus Brief at 25.

[18] *See* Hope Credit Union/Hope Policy Institute/Hope Enterprise Corporation Comment Letter on Equal Credit Opportunity Act (Regulation B) (Dec. 15, 2025), *available at* https://www.regulations.gov/comment/CFPB-2025-0039-3777 (the "Hope Comment") at 4.

[19] *Id.* at 5.

indicative of systemic barriers that functionally operate to discriminate on the basis of race. Disparate-impact liability is a legally appropriate means for impacted individuals to show that such unjustified barriers constitute unlawful discrimination in violation of the ECOA.

### D. Disparate Impact Liability Fosters, Rather Than Chills, Market Growth

Finally, the Chamber claims that disparate impact liability injects "legal uncertainty" and harms businesses.[20] Market history proves the opposite. Well-settled disparate impact jurisprudence provides clear rules of the road that allow financial institutions to safely reach untapped markets. For example, after the U.S. Department of Housing and Urban Development codified disparate impact jurisprudence under the Fair Housing Act in 2013, mortgage loan originations actually increased.[21] By utilizing fair lending practices, Hope's own mortgage portfolio has more than quadrupled while maintaining very low rates of default.[22] Unwinding decades of disparate-impact precedent would actually *inject* uncertainty into the financial system, not eliminate it.

**CONCLUSION**

This Court should disregard the Amicus Brief and decline to address the Chamber's argument concerning disparate-impact liability under the ECOA

---

[20] Amicus Brief at 7.
[21] Hope Comment at 6.
[22] *Id.*

8

because it does not relate to any issue presented in this appeal, and it is irrelevant to the outcome of this appeal. If this Court does address the issue, it should not abolish disparate-impact liability under the ECOA. There is no reason to believe that disparate-impact liability under the ECOA is problematic for nondiscriminatory lenders and eliminating it would serve no purpose other than to encourage the kind of systemic discrimination in lending that remains a problem in our country.

THIS the 3rd day of March, 2026.

Respectfully submitted,

**HOPE FEDERAL CREDIT UNION**

By: /s/ Christopher H. Meredith
    Christopher H. Meredith, MSB No. 103656
    Copeland, Cook, Taylor & Bush, P.A.
    600 Concourse, Suite 200
    1076 Highland Colony Parkway (Zip—39157)
    P.O. Box 6020
    Ridgeland, MS 39158-6020
    Telephone: (601) 856-7200
    Facsimile: (601) 856-7626
    cmeredith@cctb.com
    *Its Attorney*

## CERTIFICATE OF SERVICE

I certify that I have this day served, via the Court's ECF Notification System,

a true and correct copy of the above and foregoing on everyone signed up to receive

ECF notices in this case, including:

Jay Richard Boltin
jboltin@grsm.com

Carolyn Diane Deal
carolyn.deal@yahoo.com

Douglas Lee Harville
lee.harville@theharvillelawfirm.com

Daphne Marie Lancaster
dlancaster@leefutrell.com

Alexander Virgil Maugeri
amaugeri@jonesday.com

Hannah Templin
htemplin@jonesday.com

**THIS** the 3rd day of March, 2026.

/s/ Christopher H. Meredith
*Attorney of Record for Appellee*
*Hope Federal Credit Union*

10

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 1,799 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 5th. Cir. R. 32.2.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1, and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been set in a 14-point, proportionally spaced, plain, roman-style typeface, except for footnotes, which are in 12-point proportionally spaced typeface.

**THIS** the 3rd day of March, 2026.

/s/ Christopher H. Meredith
*Attorney of Record for Appellee*
*Hope Federal Credit Union*

11